IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA BROWN, on behalf of herself and her minor son, R.P. | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA, | : : : | No. 11-6019 |
| Defendant. | : | |

**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                                       **July 26, 2012**

Victoria Brown ("Plaintiff") commenced this civil action on behalf of herself and her minor son, R.P., by filing a Complaint against the School District of Philadelphia (the "District"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. (Count I), Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 (Count II), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Count III). Presently before the Court is the District's Motion to Dismiss Plaintiff's Rehabilitation Act and ADA Claims (ECF No. 6), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons that follow, the District's Motion to Dismiss is DENIED.

**I.      Factual and Procedural Background**

The following facts are drawn from the Complaint. In 2003, a pediatrician diagnosed R.P. – a fifteen-year-old student who attends Fells High School, located in the School District of

---

[1]Defendant has not moved to dismiss Plaintiff's IDEA claim.

1

Philadelphia – with Attention Deficit Disorder ("ADHD"). (Cplt. §§ 11, 14.) This diagnosis was promptly communicated to the District. (Id. § 14.) In 2005, the District evaluated R.P. and determined that he was not eligible for services under the IDEA because, according to the District, he was not a student with a disability. (Id. § 16.)

In October 2007, apparently as a result of R.P.'s behavioral problems, Plaintiff and the District entered into a service agreement, pursuant to Section 504 (the "504 Plan"), which provided certain accommodations to R.P. based on his ADHD. (Id. § 17.) At that time, the District did not provide Plaintiff with notice of her procedural safeguard rights. (Id. § 18.) As a result, Plaintiff was unaware that the IDEA and Section 504 limited the time within which she could request a due process hearing to challenge the 504 Plan. (Id.)

In April 2008, Plaintiff became dissatisfied with the accommodations offered to R.P. under the 504 Plan. (Id. § 19.) Plaintiff remained unaware that the IDEA and Section 504 limited the time within which she could request a due process hearing. (Id.) At all times, District staff represented to Plaintiff that the accommodations provided to R.P. were sufficient to meet his needs, and that the 504 Plan was being implemented completely. (Id. § 20.)

During the 2008-2009 school year, R.P. exhibited behavioral problems that interfered with his learning. (Id. § 22.) In late 2008, Plaintiff suffered two strokes, which impacted her speech abilities and required hospitalization and inpatient rehabilitation for six months. (Id. § 21.)

In April 2009, Plaintiff notified the District that she was not satisfied with the educational services being provided to R.P. (Id. § 26.) In June 2009, the District completed a Reevaluation

Report for R.P., concluding that he was eligible for special education services and had a primary disability.  (Id. § 23.)

On July 8, 2009, the District convened a settlement meeting, at which the District offered an Individualized Education Plan ("IEP"), pursuant to the IDEA.  (Id. § 24.)  At that meeting, Plaintiff understood that the proposed IEP was available to R.P. only if she signed a settlement agreement.  (Id.)  A certified school psychologist did not attend the July 8, 2009 meeting.  (Id.)  Nor was it an IEP Team meeting.  (Id.)

Subsequently, on or about July 9, 2009, the District proposed an amended IEP, identifying R.P. as eligible for special education and providing certain services.  (Id. § 25.)  However, the District never convened an IEP Team meeting to review this new proposed IEP.  (Id.)  Notwithstanding the foregoing, from March 2009 through late in the 2010-2011 school year, R.P. received no special education services at all.  (Id. § 27.)

On December 30, 2010, Plaintiff filed an administrative complaint against the District, alleging that, among other things, the District had failed to comply with its "child find" duties under the IDEA and Section 504, failed to provide R.P. with a free appropriate public education ("FAPE") under the IDEA and Section 504, and failed to allow Plaintiff to participate appropriately in R.P.'s educational planning process.  On June 28, 2011, an administrative hearing officer issued a decision, concluding that the District complied with its legal obligations under the IDEA and Section 504, and that Plaintiff and R.P. were entitled to no relief.  (See Cplt., Exh. A.)

As noted above, on September 23, 2011, Plaintiff commenced the instant action on behalf of herself and R.P. by filing a Complaint (ECF No. 1) against the District, alleging violations of

the IDEA, Section 504, and the ADA. Plaintiff seeks the following relief: reversal of the administrative hearing officer's decision; compensatory education and monetary damages; reasonable attorney's fees and costs for the administrative and federal proceedings; and any other relief that the Court deems appropriate.

On February 29, 2012, the District separately filed an Answer to Plaintiff's IDEA Claim (ECF No. 5), and a Motion to Dismiss Plaintiff's Rehabilitation Act and ADA Claims (ECF No. 6). On March 30, 2012, Plaintiff filed a Response in Opposition to the District's Motion to Dismiss (ECF No. 10.) The District did not file a Reply.

**II.      Legal Standards**

**A.      Jurisdiction**

This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i).

**B.      Standard of Review**

A claim may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Generally, a district court may consider only facts alleged in the complaint and its attachments on a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). The court may also take into consideration a "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

The Third Circuit has held that a district court must conduct a two-part analysis to determine whether a claim survives a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must distinguish between the factual and legal elements of the claim. Id. at 210–11. The court must accept as true the plaintiff's well-pled allegations and construe the complaint in the light most favorable to the plaintiff, Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 253 (3d Cir.2009) (citing Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 405 (3d Cir.2008)), but not "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," Fowler, 578 F.3d at 210 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Second, the court must inquire whether the complaint states a plausible claim to relief. Id. at 211 (citing Iqbal, 129 S. Ct. at 1950). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

**III.   Discussion**

The District moves to dismiss Plaintiff's Section 504 and ADA claims on several grounds. The District's principal contentions relate to the remedies available to Plaintiff under Section 504 – namely, Plaintiff's ability to recover monetary damages under that statute. The District also advances several arguments relating to the sufficiency of the allegations in the Complaint to establish liability under the ADA.[2] The Court will address the District's

---

[2]Curiously, the District does not raise the same arguments with respect to Plaintiff's Section 504 and ADA claims, even though, as discussed below, virtually the same standards govern both claims.

Moreover, the District does not argue that Plaintiff lacks standing to pursue her Section

contentions relating to liability under the ADA first, and then proceed to analyze the District's contentions relating to monetary damages under Section 504.

### A.     The Complaint States a Claim for Liability Under the ADA

"[T]he substantive standards for determining liability under [Section 504] and the ADA are the same." Ridley Sch. Dist. V. M.R., 680 F.3d 260, 282-83 (3d Cir. 2012) (citing McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 94-95 (3d Cir. 1995)).  In order to prevail on a claim under either Section 504 or the ADA, a plaintiff must establish that he or she "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his or] her disability." Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009) (citing Nathanson v. Med. Coll. of Pa., 926 F.2d 227, 230 (3d Cir. 1991)).  In addition, the plaintiff must demonstrate that the defendant knew or should have reasonably been expected to know of her disability. Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1997), superseded by statute as recognized in P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009).  However, to establish liability, "a plaintiff need not prove that defendant['s] discrimination was intentional." Id.[3]

---

504 and ADA claims in her own right.  Following the Supreme Court's decision in Winkelman v. Parma City School District, 550 U.S. 516 (2007), the Third Circuit has recognized that parents have standing to pursue IDEA claims in their own right. Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ., 587 F.3d 176, 183 (3d Cir. 2009).  However, the Third Circuit has not ruled on the question of whether parents also have standing to do so under Section 504 or the ADA. See id. at 187.  Because the District does not raise the argument here, the Court will assume for purposes of the instant Motion that Plaintiff has standing to pursue her Section 504 and ADA claims in her own right.

[3]The only substantive difference between Section 504 and the ADA for purposes of establishing liability is that Section 504 "requires the additional showing that the program

Here, the District makes no argument relating to whether R.P. is "otherwise qualified" to participate in school activities. The District, however, challenges the sufficiency of the allegations in the Complaint to satisfy the remaining elements of an ADA claim.

### 1. The Complaint Contains Sufficient Allegations that R.P. Is a Qualified Individual Under the ADA

The District contends that the Complaint does not allege that R.P. is a qualified individual with a disability under the ADA. The Court disagrees.

Under Title II of the ADA, a "disability" with respect to individuals like Plaintiff and R.P. is defined as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). In turn, "major life activities" include, but are not limited to, "major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2). A "major life activity" also includes "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(3). "An

---

receives federal financial assistance." Chambers, 587 F.3d at 189 n.20. The District explicitly concedes that it receives federal financial assistance for purposes of Section 504.

impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." Id. § 12102(4)(C).

In this case, the Complaint contains several details concerning R.P.'s alleged disability. Not only does the Complaint allege that R.P. was diagnosed with ADHD in 2003, but that the District itself concluded in June 2009 that he was eligible for special education and had a primary disability. (Cplt. ¶¶ 14, 23.) The Complaint also alleges that R.P. is limited or impaired with respect to numerous major life activities, such as learning and reading, among other things.[4]

Accordingly, construing the allegations in a light most favorable to Plaintiff, the Complaint adequately pleads that R.P. is a qualified individual with a disability under the ADA.

### 2. The Complaint Contains Sufficient Allegations of Differential Treatment Under the ADA

Next, the District contends that the Complaint does not allege that R.P. was excluded from any school activities available to students, or that benefits were withheld from him, or that he was treated differently by District officials because of his disabilities. Again, the Court disagrees.

The Third Circuit has recognized that "the failure to provide a [FAPE] violates IDEA and therefore could violate [Section 504]." Chambers, 587 F.3d at 189 (quoting Ridgewood, 172 F.3d at 253 (citing W.B. v. Matula, 67 F.3d 484, 501 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 803, 806 (3d Cir. 2007) (en banc)).[5] The IDEA

---

[4](See, e.g., Cplt. ¶ 22 ("R.P. exhibited behaviors that interfered with his learning."); id. ¶ 31 ("R.P. . . . was functionally illiterate in reading and math, and had significant behavioral problems.")

[5]Like the IDEA, Section 504's implementing regulations require a school district to "provide a free appropriate public education to each qualified handicapped person who is in [its]

requires institutions receiving federal education funding to provide a FAPE to disabled children. 20 U.S.C. § 1412(a)(1); Ridley Sch. Dist. v. M.R., 680 F.3d 260, 268 (3d Cir. 2012). "A school district provides a FAPE by designing and implementing an individualized instructional program set forth in an [IEP], which 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" P.P. v. West Chester Area Sch. Dist., 585 F.3d at 729-30 (quoting Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir.2004) (citations and internal quotation marks omitted)). "The school district must conduct an evaluation of the student's needs, assessing all areas of suspected disability, before providing special education and related services to the child." Id. at 730 (citing 20 U.S.C. § 1414(b)).

    The Third Circuit has also recognized that Section 504 "imposes a 'child find' duty, or the duty to identify a disabled child 'within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability.'" Ridgewood, 172 F.3d at 253 (quoting Matula, 67 F.3d at 500-01). The child find requirement provides that "[a]ll children with disabilities residing in the State . . . are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services." 20 U.S.C. § 1412(a)(3). Accordingly, "[s]chool districts have a continuing obligation under the IDEA . . . to identify and evaluate all students who are reasonably suspected of having a disability." Ridley, 680 F.3d at 271 (3d Cir. 2012) (quoting P.P. v. West Chester Area Sch. Dist., 585 F.3d at 738 (citation omitted)). Students who are

---

jurisdiction." Ridgewood, 172 F.3d at 253 (quoting Matula, 67 F.3d at 492-93 (quoting 34 C.F.R. § 104.33(a))). Thus, "there are few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." Id. (citing Matula, 67 F.3d at 492-93).

suspected of having a qualifying disability under the IDEA must be identified and evaluated "within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability." Id. at 271-72 (quoting Matula, 67 F.3d at 501).

The Third Circuit has further recognized that "a school's failure to notify parents of its IDEA duties could violate § 504." Ridgewood, 172 F.3d at 253 (citing Matula, 67 F.3d at 501 n.13). The IDEA affords parents certain procedural safeguards, including, among other things, the right to: examine all records and participate in all meetings with respect to the identification, evaluation, and educational placement of their child, 20 U.S.C. § 1415(b)(1); receive written notice whenever a school proposes to change or refuses to change an identification, evaluation, or educational placement of their child, id. § 1415(b)(3); and participate in mediation to resolve any disputes arising under the IDEA, id. § 1415(b)(5). M.A. ex. rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 339 (3d Cir. 2003); Matula, 67 F.3d at 492.

As noted above, "the substantive standards for determining liability under [Section 504] and the ADA are the same." Ridley, 680 F.3d at 282-83. Thus, because a school's failure to provide a FAPE, to comply with the child find requirement, or to notify parents of its IDEA duties could violate Section 504, any of these acts or omissions on the part of a school could, by implication, also violate the ADA.

Here, the Complaint contains numerous allegations that the District denied R.P. a FAPE, violated the child find requirement, and failed to notify Plaintiff of its IDEA duties with respect to R.P. Indeed, the Complaint alleges, among other things, that: the District ignored R.P.'s identification as a child with a disability from 2003-2005, even though it was on notice that he might have a disability; the District refused to classify him as having a disability under the IDEA

in 2005; represented that the program of accommodations under R.P.'s 504 Plan was sufficient to meet his needs and that it was being completely implemented, even though those representations were not accurate; failed to respond to medical practitioners' requests that he be provided an IEP in 2007; failed to provide Plaintiff with notice of her procedural safeguard rights; failed to convene a team meeting attended by Plaintiff and a certified psychologist to review the 2009 Reevaluation Report; conditioned receipt of an IEP on Plaintiff's signature of a settlement of potential past claims; and failed to convene a an IEP Team meeting. (Cplt. ¶¶ 6, 15, 16, 18, 20, 23, 33.)

Accordingly, construing the allegations in a light most favorable to Plaintiff, the Complaint adequately pleads differential treatment under the ADA.

### B. The Complaint States a Claim for Monetary Damages Under Section 504

The District contends that Plaintiff fails to state a Section 504 claim for compensatory damages because the Complaint does not allege that the District "intentionally" discriminated against R.P. The District also contends that Plaintiff's Section 504 claim should be dismissed because it is based entirely on the same facts alleged in support of her IDEA claim. In response, Plaintiff contends that intentional discrimination need not be alleged under Section 504 to recover monetary damages, and even if it were required, the Complaint contains sufficient allegations to survive a motion to dismiss.

#### 1. Plaintiff Must Allege Intentional Discrimination to State a Claim for Monetary Damages

The remedies for violations of Section 504 of the Rehabilitation Act are "coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights

Act of 1964." Barnes v. Gorman, 536 U.S. 181, 185 (2002); see also 29 U.S.C. § 794a(a)(2).[6] In Guardians Association v. Civil Service Commission of New York City, 463 U.S. 582 (1983), the Supreme Court "held that private individuals could not recover compensatory damages under Title VI except for intentional discrimination." Alexander v. Sandoval, 532 U.S. 275, 276 (2001) (citing Guardians, 463 U.S. at 602-03) (emphasis in original). Although the Third Circuit has determined that "plaintiffs may seek monetary damages directly under § 504," Matula, 67 F.3d at 494, the Third Circuit has never addressed whether monetary damages are available under Section 504 absent a showing of intentional discrimination.

All other circuit courts to have considered the issue, however, have determined that a plaintiff must establish that the alleged discrimination was intentional to recover monetary damages under Section 504. See Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011) (Section 504 and ADA); Nieves–Marquez v. Puerto Rico,, 353 F.3d 108, 126 (1st Cir. 2003) (Section 504 and ADA); Delano–Pyle v. Victoria Cnty., 302 F.3d 567, 574 (5th Cir.2002) (same); Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135-36 (9th Cir. 2001) (same); Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir.1999) (Section 504); Bartlett v. N.Y. State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir.1998) (Section 504 and ADA), vacated on other grounds, 527 U.S. 1031 (1999); Pandazides v. Va. Bd. of Educ., 13 F.3d 823, 830 (4th Cir.1994) (Section 504); Wood v. President & Trs. of Spring Hill Coll., 978 F.2d 1214, 1218-20 (11th Cir. 1992) (Section 504); cf. Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross, 486

---

[6]Section 505(a)(2) of the Rehabilitation Act provides: "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794a(a)(2).

F.3d 267, 278 (7th Cir.2007) (noting that district court applied correct standard when it found that "no reasonable trier of fact could find that [the School District] intentionally discriminated against [the plaintiff]").

Numerous district courts within the Third Circuit have reached the same conclusion. See, e.g., David G. v. Council Rock Sch. Dist., No. 06-cv-1523, 2012 WL 1231812, at *3 (E.D. Pa. Apr. 12, 2012) (Pollak, J.) (Section 504 and ADA); Chambers v. Sch. Dist. of Phila. Bd. of Educ., 827 F. Supp. 2d 409, 425 (E.D. Pa. 2011) (Pratter, J.) (same); Adam C. v. Scranton Sch. Dist., No. 07-cv-532, 2011 WL 996171, at *4 n. 7 (M.D. Pa. Mar. 17, 2011) (same); Gallagher v. Allegheny Cnty., No. 09-cv-103, 2011 WL 284128, at *7 n. 14 (W.D. Pa. Jan. 25, 2011) (same); Kaitlin C. ex rel. Shannon M. v. Cheltenham Twp. Sch. Dist., No. 07-cv-2930, 2010 WL 786530, at *5 (E.D. Pa. Mar. 5, 2010) (Surrick, J.) (Section 504); L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist., No. 04-cv-1381, 2009 WL 737108, at *5-*6 (D.N.J. Mar. 17, 2009) (same); Meadows v. Hudson Cty. Bd. of Elec., No. 04-cv-3979, 2006 WL 2482956, at *10-*11 (D.N.J. Aug. 24, 2006) (Section 504 and ADA).[7]

Plaintiff nevertheless urges this Court to follow Judge Pollak's decision in Allyson B. v. Montgomery County Intermediate Unit No. 23, No. 05-cv-6807, 2008 WL 2405771, at *3 (E.D. Pa. June 12, 2008), apparently the only case in which a court within the Third Circuit has determined that a plaintiff need not allege intentional discrimination to recover monetary

---

[7]Numerous district courts within the Third Circuit have also reached the same conclusion with respect to the ADA. See, e.g., Redmond v. SEPTA, No. 09-cv-5075, 2010 WL 1141210, at *4 (E.D. Pa. Mar. 23, 2010) (Shapiro, J.); McCree v. SEPTA, No. 07-cv-4908, 2009 WL 16660, at *9-*10 (E.D. Pa. Jan. 22, 2009) (Surrick, J.); Dorsett v. SEPTA, No. 04-cv-5968, 2005 WL 2077252, at *5 (E.D. Pa. Aug. 29, 2005) (Kelly, J.); Douris v. Bucks Cnty. Off. of Dist. Att'y, No. 03-cv-5661, 2004 WL 1529169, at *5 n. 7 (E.D.Pa. Jul. 6, 2004) (Surrick, J.); Bowers v. NCAA, No. 97-cv-2600, 2001 WL 1850089, at *2 (D.N.J. Feb. 6, 2001).

damages under Section 504. In a subsequent case, however, Judge Pollak expressly renounced the conclusion he reached in Alyson B. regarding intentional discrimination. David G., 2012 WL 1231812, at *3 ("I now conclude that I was wrong. Because the ADA and § 504 adopt Title VI's remedies and private individuals must prove intentional discrimination in order to recover compensatory damages under Title VI, [plaintiff] must prove intentional discrimination in order to recover monetary damages for a violation of the ADA or § 504."). Therefore, this Court does not find Alyson B. to be persuasive.

Additionally, Plaintiff contends that this Court's decisions in K.R. v. School District of Philadelphia, No. 06-2388, 2007 WL 2726236, at *2 & n.4 (E.D. Pa. Sept. 17, 2007) (Baylson, J.), and K.R. v. School District of Philadelphia, No. 06-2388, 2008 WL 2609810, at *7-*8 (E.D. Pa. June 26, 2008) (Baylson, J.), support the proposition that monetary damages are available under Section 504 and the ADA absent a showing of intentional discrimination. But the language concerning intentional discrimination in those decisions dealt solely with the standard for liability, not monetary damages. In neither case did this Court reach the question of whether proof of intentional discrimination is required to recover monetary damages under Section 504 or the ADA.

Accordingly, consistent with the great weight of authority in this and other circuits, this Court concludes that Plaintiff is required to allege, and eventually prove, intentional discrimination in order to recover monetary damages under Section 504.[8]

---

[8] This conclusion applies equally to Plaintiff's ADA claim.

### 2. The Complaint Contains Sufficient Allegations of Intentional Discrimination to Survive the District's Motion to Dismiss

Though the case law indicates that a showing of intentional discrimination is required to recover monetary damages under Section 504, it is not clear what level of intent is required to establish a right to relief under the statute. Some courts require a showing of deliberate difference on the part of the defendant, see, e.g., Meagley, 639 F.3d at 389; Bartlett, 156 F.3d at 331, while others have suggested that a more stringent showing of discriminatory animus may be appropriate, see, e.g., T.W. ex re. Wilson v. Sch. Bd. of Seminole Cnty., 610 F.3d 588, 604 (11th Cir. 2010); Wood, 978 F.2d at 1218-20.

In light of the ambiguity in the case law and the absence of any briefing by the parties on this issue, the Court declines, at this early stage of the litigation, to construe the level of intent required to establish a Section 504 claim as anything more than deliberate indifference.[9] Cf. A.G. v. Lower Merion Sch. Dist., No. 11-2025, 2011 WL 6412144, at *5 (E.D. Pa. Dec. 20, 2011) (denying motion to dismiss Section 504 and ADA claims for monetary damages because "it is premature at this stage of the litigation to decide whether [plaintiff] will be able to produce evidence of intent").

Under the deliberate indifference standard, intentional discrimination can be "'inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'" Chambers, 827 F. Supp. 2d at 425 (quoting Meagley, 639 F.3d at 389; Barber ex rel. Barber v. Colo. Dep't of Rev., 562 F.3d 1222, 1228–29 (10th Cir.2009)). "Deliberate indifference requires that an official with authority

---

[9]The Court does not reach the question of whether Plaintiff's Section 504 and ADA claims could survive a motion to dismiss under the discriminatory animus standard.

to address the alleged discrimination has 'both knowledge that a harm to a federally protected right is substantially likely, and . . . fail[s] to act upon that likelihood.'" Id. (quoting Barber, 562 F.3d at 1229; Duvall, 260 F.3d at 1139). "[T]he 'knowledge' element is satisfied where the public entity has notice of the plaintiff's need for accommodation, and the 'failure to act' element is satisfied by conduct that is 'more than negligent, and involves an element of deliberateness.'" Id. (quoting Duvall, 260 F.3d at 1139).

In this case, the allegations in the Complaint are sufficient to meet the deliberate indifference standard. The Complaint clearly alleges that "the District discriminated against both Brown and R.P. on the basis of their disabilities." (Cplt. ¶ 45.) Moreover, the Complaint contains numerous allegations suggesting that the District had notice of R.P.'s need for accommodation and that it exhibited a pattern of conduct that was more than merely negligent.[10]

Accordingly, for purposes of the instant Motion, the Court finds that Plaintiff has adequately plead intentional discrimination to state a claim for monetary damages under Section 504. Thus, Plaintiff may proceed to discover facts relevant to her claims for monetary damages. See A.G., 2011 WL 6412144, at *5. Of course, the District remains free to attempt to

---

[10](See, e.g., Cplt. ¶ 14 ("R.P. was initially diagnosed with Attention Deficit Disorder in 2003. . . . This 2003 diagnosis was made by a pediatrician and promptly communicated to the District."); id. ¶ 15 ("Between the time of diagnosis and early 2005, the District did not take any meaningful steps to locate and identify R.P. as a student with a disability . . . ."); id. ¶ 18 ("[Plaintiff] did not receive any notice of her procedural safeguard rights in 2007 . . . ."); id. ¶ 27 ("From March 2009 forward and until late in the 2010011 school year, R.P. received no special education services."); id. ¶ 32 ("[T]he District made no effort to contact R.P.'s other parent or to resolve R.P.'s lack of services through mediation or other non-litigation means."); id. ¶ 33 ("[T]he District . . . ignored [R.P.'s identification of ADHD from 2003 until 2005; . . . refused to classify him as having a disability under the IDEA in 2005; . . . failed to respond to medical practitioners' requests that he be provided an IEP in 2007; . . . conditioned receipt of an IEP on the parents' signature of a settlement of potential past claims . . . .").

demonstrate at summary judgment or at trial that the evidence does not, in fact, support an inference of deliberate indifference.

### 3. Plaintiff's Section 504 Claim for Monetary Damages Is Based on Distinct Allegations From Her IDEA Claim

Based on the foregoing analysis, the Court also rejects the District's argument that Plaintiff's Section 504 claim should be dismissed because it is based entirely upon the same facts asserted in support of her IDEA claim.

Significantly, monetary damages are not an available remedy under the IDEA. Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Educ., 587 F.3d 176, 185-86 (3d Cir. 2009). Nor is intentional discrimination required to be shown to prevail on a claim brought under the IDEA. Therefore, the numerous allegations of intentional discrimination asserted by Plaintiff in the Complaint[11] distinctly and directly support an independent claim for monetary damages under Section 504.

The District, however, insists that certain cases in which courts have refused to award monetary damages for alleged violations of Section 504 premised on a school district's denial of FAPE warrant a different result. See Sch. Dist. of Phila. v. Deborah A., No. 08-cv-2924, 2009 WL 778321, at *11 (E.D. Pa. Mar. 24, 2009) (Schiller, J.); Neena S. ex rel. Roberts S. v. Sch. Dist. of Phila., No. 05-cv-5404, 2008 WL 5273546, at *15 (E.D. Pa. Dec. 19, 2008) (O'Neill, J.). These cases are inapposite. Indeed, neither addressed intentional discrimination or its relationship to the ability to recover monetary damages under Section 504. Nor is there any indication in either case of any allegations of intentional discrimination to support such a claim.

---

[11]See supra note 10.

Therefore, these cases do not alter the Court's conclusion that Plaintiff has adequately plead a claim for monetary damages under Section 504.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED. An appropriate order follows.

O:\CIVIL 11\11-6019 Brown v. School District of Philadelphia\Memo re MTD.wpd